UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
02 MAR 28 PM 1:29
U.S. D...
N.D. OF ALABAMA

MARGARET K. NALER, )
)
    Plaintiff, )
)
vs. ) Civil Action No. CV-02-0258-NE
)
KROGER LIMITED PARTNERSHIP I, )
)
    Defendant. )

ENTERED
MAR 28 2002

## MEMORANDUM OPINION

This action is before the court on the motion to remand filed by plaintiff, Margaret Naler. Her cause of action arose from injuries sustained in one of the defendant's grocery stores.[1] Ms. Naler is a resident of the State of Alabama, and defendant is an Ohio limited partnership with its principal place of business in that same State.[2]

Plaintiff originally filed her complaint on January 24, 2001, in the Circuit Court of Madison County, Alabama. She sought "past, present, and future damages which she shall reasonably sustain, in the amount of $70,000, plus interest, costs and such other and further relief as to the Court or jury seems proper and just."[3] She filed an amended complaint on February 5, 2001, but its *ad damnum* clause was identical to that of her original complaint.[4]

The state court scheduled the case for trial on the civil jury docket due to begin on February

---

[1] *See* Complaint (attached to defendant's Notice of Removal (doc. no. 1)) ¶ 3:

    This cause of action arises from a fall by Plaintiff at Defendants' premises known as Winn Dixie Store #1912, on or about August 17, 2000 resulting in severe injuries to the Plaintiff. At the time, Plaintiff was a patron and business invitee at Defendants' premises, and was existing those premises when an agent, servant or employee of Defendant negligently and/or wantonly ran into the plaintiff with such force that she was knocked to the ground.

[2] *See* defendant's Notice of Removal (doc. no. 1) ¶ 2, at 4.

[3] Complaint at unnumbered pages 2-3.

[4] First Amendment to Complaint (attached to notice of removal), at unnumbered page 3.

4

25, 2002.[5] In last-minute preparation for trial, defendant took plaintiff's deposition on January 17, 2002.[6]

Eight days after plaintiff's deposition — *i.e.*, on January 25, 2002, one year and one day after institution of suit — plaintiff's attorney filed a motion seeking leave to file a second amendment to the complaint, for the purpose of increasing plaintiff's *ad damnum* demand to the amount of $350,000. Counsel made the following statements as grounds for that motion:

> This case is set for trial in less than sixty (60) days [*sic*[7]] and plaintiff moves for leave to amend the complaint to increase the damages claimed in the *ad damnum* clause and as grounds therefore states that the true nature of plaintiff's injuries has been an ongoing process with her medical treatment and post-treatment recuperation. *Plaintiff gave sworn testimony recently describing the debilitating pain and problems that she has sustained and plaintiff is unable to drive and walk normally as a result of injuries sustained in the accident on defendant's premises. It appears that such problems are permanent in nature.*[8]

The amendment was allowed by the state court judge on January 28, 2002, by means of an order handwritten on the face of the motion: "Granted 1/28/02 LHL, C.J."[9] Two days later, defendant filed a motion asking the state judge to reconsider his order, and strike plaintiff's second amended complaint, saying:

---

[5]Docket entry of Madison County Circuit Court (attached to notice of removal).

[6]Notice of Deposition (attached to notice of removal).

[7]In fact, trial was scheduled to begin *thirty-one* days later, on February 25, 2002. Compare that fact to Alabama Rule of Civil Procedure 15(a), providing:

> (a) *Amendments*. Unless a court has ordered otherwise, a party may amend a pleading without leave of court, *but subject to disallowance on the court's own motion or a motion to strike of an adverse party, at any time more than forty- two (42) days before the first setting of the case for trial*, and such amendment shall be freely allowed when justice so requires. Thereafter, a party may amend a pleading only by leave of court, and leave shall be given only upon a showing of good cause. A party shall plead in response to an amended pleading within the time remaining for a response to the original pleading or within ten (10) days after service of the amended pleading, whichever period may be longer, unless the court orders otherwise. [Emphasis added.]

[8]Motion for Leave to Amend the Complaint (attached to notice of removal) (emphasis added).

[9]*Id.*

2

> Pursuant to Rule 15(a) of the Alabama Rules of Civil Procedure, a party may amend a pleading within 42 days before the first setting of the case for trial only by leave of court and leave shall be given *only* upon a showing of *good cause*.[10] Plaintiff does not have good cause for further amending her Complaint because plaintiff's Motion for Leave to Amend the Complaint, seeking to increase the specific amount of plaintiff's damages from $70,000 to $350,000, together with plaintiff's Complaint and First Amendment to Complaint are an attempt by plaintiff to intentionally avoid federal jurisdiction.[11]

Before the state court could rule on that motion, however, defendant filed a notice of removal in this court, asserting jurisdiction on the basis of the parties' diversity of citizenship and the requisite amount in controversy. *See* 28 U.S.C. § 1332(a)(1); doc. no. 1 (defendant's January 31, 2002 notice of removal). Plaintiff filed a motion to remand on February 26, 2002, within the requisite thirty-day limitation period following removal. *See* 28 U.S.C. § 1447(c).[12] Plaintiff asserts that removal is prohibited by 28 U.S.C. § 1446(b), because it occurred more than one year after the original complaint was filed in state court.

## I. DISCUSSION

Resolution of the issue raised by plaintiff requires this court to review the amendments to 28 U.S.C. § 1446(b) that were effected by the Judicial Improvements and Access to Justice Act of 1988, Pub. L. No. 100-702, § 1016, (the "Act," or the "Judicial Improvements Act"), which contained in ten titles a variety of provisions designed to reduce federal caseloads.

The text of § 1446(b) as it existed on November 19, 1988, the day the Act was signed by the

---

[10]*See supra* note 7.

[11]Defendant's January 30, 2002 "Motion for Reconsideration of Order Granting Leave to Amend Complaint, Objection to Motion for Leave to Amend Complaint[,] and Motion to Strike Plaintiff's Second Amendment to Complaint" (attached to notice of removal) ¶ 6, at 3 (emphasis in original).

[12]28 U.S.C. § 1447(c) provides, in pertinent part, that:

> A motion to remand the case *on the basis of any defect other than lack of subject matter jurisdiction* must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. ... [Emphasis supplied.]

3

President,[13] contained two paragraphs. The first required that a defendant file the appropriate removal document (then called a "petition for removal") in federal court within thirty days after receiving either an initial pleading or a summons. The second paragraph — the one pertinent to the present controversy — provided that a defendant in a state court action that was not removable on the basis of the initial pleading could file the appropriate removal document in federal court within thirty days after receiving "a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable."

Section 1016(b)(2) of the Judicial Improvements Act substituted the phrase "notice of removal" for "petition for removal," and added a proviso to the end of the second paragraph, prohibiting removal on the basis of diversity jurisdiction after a case had been pending in state court more than one year. Pub. L. No. 100-702, § 1016(b)(2)(B), 1988 U.S.C.C.A.N. 5982, 6031-34. With these changes shown in italics, the text of § 1446(b), as it has existed since November 19, 1988, reads as follows:

> (b) The *notice of removal* of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a *notice of removal* may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, *except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.*

---

[13]*See Greer v. Skilcraft*, 704 F. Supp. 1570, 1573 (N.D. Ala. 1989) (en banc). The judges of the U.S. District Court for the Northern District of Alabama held in their en banc *Greer* decision that the amendments discussed in this section "became effective on November 19, 1988." *Id.* at 1583.

28 U.S.C. § 1446(b) (emphasis supplied). Reading the two paragraphs *in pari materia*, it should be noticed that

> amended § 1446(b) provides that for cases not removable on the basis of the initial complaint there are two separate and independent time limits: (1) the Notice of Removal must be filed within 30 days from the receipt of a jurisdiction-creating document in the case; and (2), if removal is based on diversity of citizenship, the Notice of Removal must also be filed within one year from the commencement of the action.

*Greer v. Skilcraft*, 704 F. Supp. 1570, 1582 (N.D. Ala. 1989) (en banc).

The judges of this court, in an unusual en banc decision entered two months after enactment of the Judicial Improvements Act,[14] observed that one of the areas of major concern providing impetus for the legislation "was the rising caseload in the federal courts." *Id.* at 1575. Indeed, Congress initially considered "total elimination of diversity jurisdiction," but that "approach apparently proved too controversial and was dropped from later versions of the legislation." *Id.* at 1575 n.5. In lieu of a total ban upon removal of diversity cases, the Act, "at least as a partial solution [to the rising federal caseload], ... made various changes to reduce the number of diversity-of-citizenship cases that would be handled in federal court." *Id.* at 1575.[15]

> The only source for determining the understanding of Congress as to the meaning and scope of Section 1016 is the Section-by-Section Analysis (the "Congressional Analysis") contained in H.R.REP. NO. 889, 100th Cong., 2d Sess. 71-73 (1988), U.S.Code Cong. & Admin.News 1988, pp. 5982, 6031-6034, which

---

[14]An en banc decision was entered for two reasons:

First, there should, if possible, be uniformity within the court in ruling on these common and potentially recurring questions. Second, consideration by several judges is desirable since, by virtue of 28 U.S.C. § 1447(d), orders remanding a case to state court are not ordinarily subject to review by an appellate court.

*Greer v. Skilcraft*, 704 F. Supp. at 1572.

[15]For example, § 201 of the Act increased the required amount in controversy, and § 202 worked changes in the definitions of the citizenship of legal representative and certain corporations. *See Greer*, 704 F. Supp. at 1575. The subject amendments to § 1446(b) "to a degree will have the same effect." *Id.*

was subsequently presented to the Senate, 134 CONG.REC. S16308-09 (1988). Pertinent extracts are as follows:

> All of the proposed amendments in this section relate to removal jurisdiction. The amendments would, among other things, allow the citizenship of fictitious or "Doe" defendants to be disregarded for removal purposes; ... *establish a one-year limit on removal based on diversity jurisdiction*; ... and regulate the joinder of additional parties after removal.
>
> . . .
>
> Section (b)(2) amends 28 U.S.C. 1446(b) to establish a one-year limit on removal based on diversity jurisdiction *as a means of reducing the opportunity for removal after substantial progress has been made in state court*. The result is a modest curtailment in access to diversity jurisdiction. The amendment addresses problems that arise from a change of parties as an action progresses toward trial in state court. The elimination of parties may create for the first time a party alignment that supports diversity jurisdiction. Under section 1446(b), removal is possible whenever this event occurs, so long as the change of parties was voluntary as to the plaintiff. Settlement with a diversity-destroying defendant on the eve of trial, for example, may permit the remaining defendants to remove. *Removal late in the proceedings may result in substantial delay and disruption.*
>
> . . .
>
> [T]he Analysis also expresses concern over the delay and disruption occurring if cases are removed after they have been pending for some time in state court. ... *The Analysis indicates that Congress was aware — and intended — that the amendments would reduce opportunities for removal after a case had been pending for some time in state court and would result in elimination of defendants' potential access to federal court in some cases.*

*Greer v. Skilcraft*, 704 F. Supp. at 1576-77 (emphasis supplied). On the basis of that legislative history, the judges of this court concluded, en banc, that Congress intended the Act "to be strictly enforced." *Id.* at 1577 n.6. Acknowledging that "some may view [the *Greer*] holding as harsh," the judges of this court observed, nevertheless, that

> Congress, *which had the power to preclude removal of all cases*, certainly could have precluded removal of cases commenced more than one year prior to November 19,

6

> 1988. The clear language of the statute compels that result. *Courts are not free to disregard that mandate merely because the drafters of the legislation failed to consider all of the consequences of such a directive.*

*Id.* at 1583 (emphasis supplied).

The Eleventh Circuit addressed § 1446(b)'s one-year removal limitation in *Burns v. Windsor Ins. Co.*, 31 F.3d 1092 (11th Cir.1994), saying that

> we are not convinced that congress would find the result Windsor [the removing defendant] fears *(that is, an amendment for greater damages after the one year deadline for removal)* to be bad. The Commentary to the 1988 Revisions of 28 U.S.C. § 1446(b) shows that congress knew when it passed the one year bar on removal that some plaintiffs would attempt to defeat diversity by fraudulently (and temporarily) joining a non-diverse party. In that case, as long as there is some possibility that a non-diverse joined party could be liable in the action, there is no federal jurisdiction. But, under section 1446(b), if, after one year, the plaintiff dismisses the non-diverse defendant, the defendant cannot remove. So, a plaintiff could defeat jurisdiction by joining a non-diverse party and dismissing him after the deadline. *Congress has recognized and accepted that, in some circumstances, plaintiff can and will intentionally avoid federal jurisdiction.*

*Burns*, 31 F.3d at 1097 n.12 (emphasis supplied).

Two years after the Eleventh Circuit's opinion in *Burns*, the Supreme Court addressed § 1446(b) in *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996), saying:

> When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court, 28 U.S.C. § 1441(a), provided that no defendant "is a citizen of the State in which such action is brought," § 1441(b). In a case not originally removable, a defendant who receives a pleading or other paper indicating the post-commencement satisfaction of federal jurisdictional requirements — for example, by reason of the dismissal of a nondiverse party [or, as here, by increasing the *ad damnum* to an amount greater than $75,000] — may remove the case to federal court within 30 days of receiving such information. § 1446(b). *No case, however, may be removed from state to federal court based on diversity of citizenship "more than 1 year after commencement of the action." Ibid.*

*Caterpillar*, 519 U.S. at 68-69, 117 S.Ct. at 472-73 (emphasis supplied) (footnotes omitted).

As another judge of this court has observed, the Supreme Court's language in *Caterpillar* is "absolute, allowing no exclusions." *Barnett v. Sylacauga Autoplex*, 973 F. Supp. 1358, 1362 (N.D. Ala. 1997) (Propst, J.). Furthermore, referring to the legislative history of the Act referenced at the beginning of this discussion, Judge Propst characterized such expressions of Congressional intent as "equally unrelenting." *Id.*

Defendant correctly argues, nevertheless, that the untimeliness of a removal is a procedural, rather than a jurisdictional, defect. *See In re Uniroyal Goodrich Tire Company*, 104 F.3d 322, 324 (11th Cir. 1997) ("The untimeliness of a removal is a procedural, instead of jurisdictional, defect.") (citing *Maniar v. FDIC*, 979 F.2d 782, 784-85 (9th Cir.1992) ("We hold that untimely removal is a procedural defect and not jurisdictional."); *Barnes v. Westinghouse Elec. Corp.*, 962 F.2d 513, 516 (5th Cir.) (holding one-year time limit on removal is "procedural"), *cert. denied*, 506 U.S. 999, 113 S.Ct. 600, 121 L.Ed.2d 536 (1992)).

Accordingly, plaintiff may be equitably estopped from relying on the one-year time limit on removal specified in § 1446(b).

> Because it is merely a procedural limitation, the bar [specified in § 1446(b)] can be waived — for example, when a plaintiff fails to file a motion for remand within the thirty day time period required by 28 U.S.C. § 1447(c). *A plaintiff can also be estopped from raising the one-year bar based on equitable considerations.* For example, a plaintiff who makes no bona fide effort to serve a complaint upon the defendant until the one year period has run will be estopped from asserting that the commencement of the action occurred upon the filing of the complaint.

*Barnett*, 973 F. Supp. at 1366 (emphasis added) (citations omitted).[16]

There are three necessary prerequisites to invocation of estoppel as a means of preventing

---

[16] As noted in *Barnett v. Sylacauga Autoplex*, 973 F.Supp. 1358 (N.D. Ala. 1997), "[b]ecause § 1446(b) is a federal statute, any equitable exclusions to the statute are to be developed under federal, not state, law. Therefore, Alabama law on equitable estoppel is inapposite to the determination to estop the plaintiff from asserting the one-year bar." *Id.* at 1366 n.3.

8

a plaintiff from asserting the one-year bar of § 1446(b). The removing defendant must demonstrate: *first*, that it had no notice of the future change in the plaintiff's position; *second*, that the plaintiff changed her position in bad faith; *and third*, that proceedings in state court had not made significant progress toward trial, or that removal will not result in a substantial delay in resolution of the action. All three conditions must be satisfied.

> The key to whether a plaintiff will be estopped from raising the one-year limitation on removal is whether the defendant should have been on notice that the plaintiff would take action subsequent to the one-year limitations period that would bring the case within the diversity jurisdiction of the federal courts. *See Morrison v. National Benefit Life Ins. Co.*, 889 F. Supp. at 950; *Kinabrew v. Emco-Wheaton, Inc.*, 936 F. Supp. at 353; *Leslie v. BancTec Serv. Corp.*, 928 F.S upp. 341, 346 (S.D.New York 1996); *Kite v. Richard Wolf Medical Instruments Corp.*, 761 F. Supp. 597, 600 (S.D.Ind.1989). This is so whether or not the defendant could actually remove the case at the time he had notice. *Russaw v. Voyager Life Ins. Co.*, 921 F. Supp. 723, 725 (M.D.Ala.1996). A defendant who should have been on notice could have attempted to remove, if there was a basis for removal. If no basis for removal existed, the defendant could have filed a motion for more definite statement under Rule 12(e) of the Alabama Rules of Civil Procedure on the basis that the plaintiff has fraudulently joined certain parties to the suit *or pled beneath the amount she actually seeks* (or any other facts that would provide the federal courts with jurisdiction). If an order requiring the plaintiff to amend the complaint in accordance with the defendant's request issues, the defendant can remove once the complaint is amended and removal is clearly proper. Or, if the plaintiff does not amend the complaint to bring it within the diversity jurisdiction of the court, the defendant may raise judicial estoppel when the plaintiff attempts to amend her complaint in the future in such a way as would have brought her claims within a federal court's jurisdiction if bad faith exists.
>
> Notice exists when the possibility of removal can be inferred from the face of the complaint, as is the case when the plaintiff pleads a claim which of necessity would require the plaintiff to receive more that $75,000.00 in damages, or when facts outside the complaint would alert a reasonable defendant that something is amiss, as is often the case with joinder that is fraudulent due to a clear factual impossibility.
>
> . . .
>
> Chrysler Financial [the removing defendant] not only must demonstrate that it had no notice of the future change in the plaintiff's position, but also must

9

demonstrate that the plaintiff changed her position in bad faith. *Greer v. Skilcraft*, 704 F. Supp. at 1583. In the present case, the plaintiff's claims are in bad faith if, by her actions, she attempted to disguise the existence of the removability of the case until the one-year limitation had run. *See Morrison*, 889 F. Supp. at 950. Bad faith can generally be inferred from amendment outside of the statutory bar. *See Kinabrew v. Emco-Wheaton*, 936 F. Supp. at 353. The plaintiff has provided no justification to negate the inference.

Finally, the history of § 1446(b) indicates that the one-year limitation on removal is meant to avoid "substantial delay" in the resolution of cases and to prevent "removal after substantial progress has been made in state court." House Rep. No. 100-889 at 72, 1988 U.S.C.C.A.N. at 6032-33. *If proceedings in state court have made significant progress toward trial or if substantial delay would result in removal of the action to federal court, removal should not be available to the defendant, regardless of the plaintiff's actions.* There would be no substantial delay in the resolution of the present action if removal were permitted, nor would have the proceedings made substantial progress toward trial. Little, if any, discovery has been completed. No significant activity has occurred in the case since its filing. The new class has not been certified by the state court and no difficulties in revisiting class issues will therefore arise from removal. Therefore, the plaintiff is estopped from raising the one-year limitation as a bar to removal of the present action by Chrysler Financial.

*Barnett*, 973 F. Supp. at 1366-67 (footnotes omitted) (emphasis added).

Applying the foregoing principles to the facts of this case, the court will begin by assuming that defendant did not have notice that plaintiff would change her position on damages subsequent to the one-year limitation period. (Such a supposition is itself based upon yet another assumption, however: *i.e.*, that defendant had engaged in sufficiently thorough pre-trial discovery in state court to probe the bona fides of plaintiff's original claim for damages.)

With regard to the second prerequisite for the invocation of equitable estoppel, defendant principally relies upon the following factors as the basis for its assertion that plaintiff changed her demand for damages in bad faith: plaintiff's April 30, 2001 answers to defendant's first set of interrogatories (stating that no physician, mental health professional, chiropractor, or physical

therapist had assigned her a physical impairment rating); plaintiff's statement in deposition that her physical condition was "getting a little bit better"; and, plaintiff's act of filing a motion to amend her complaint one year and one day after filing suit. *See Barnett*, 973 F. Supp. at 1367 ("Bad faith can generally be inferred from amendment outside of the statutory bar.").

In response, plaintiff's attorney argued in his motion to remand that Ms. Naler's "sworn [deposition] testimony, given just eight days before the Motion for Leave to Amend the Complaint was filed, gave Plaintiff's counsel notice that the injuries she sustained were debilitating and possibly permanent in nature," and that "[p]laintiff's counsel [could] not have previously discovered the extent of the [p]laintiff's injuries from her medical records, as defendant's counsel ably notes in paragraph four of Defendant's Motion for Reconsideration filed in the Circuit Court of Madison County, Alabama."[17] During oral arguments on the motion, plaintiff's counsel regrettably personalized the issues, saying that the nature of his solo practice and plaintiff's circumstances had combined to prevent much face-to-face contact with his client; and, accordingly, *he* had failed to appreciate the debilitating effects of Ms. Naler's injuries until hearing her testimony, and observing her demeanor.[18] Thus, this requirement for interposition of equitable estoppel becomes a close question, made more difficult by the fact that resolution of the issue requires this court to assay the truthfulness of representations of professional misjudgment made by an officer of the court. Such a task is distasteful at best; and, if decided adversely to counsel, arguably would require this court

---

[17]Plaintiff's Motion to Remand (doc. no. 3) at unnumbered pages 3-4.

[18]Plaintiff testified, for example, that she could no longer drive a car, work in her garden, sit for long periods of time, or walk without a cane, and that she is for all practical purposes confined to her home. *See* plaintiff's deposition at, *e.g.*, 65-66, 68, 83, 128, 136.

11

to initiate disciplinary proceedings, not only here,[19] but with the Alabama State Bar Association.[20] Thankfully, this court concludes that it does not need to cross that bridge, because the issue of counsel's bad faith *vel non* is not the pivot upon which plaintiff's motion ultimately turns. As the legislative history referenced at the beginning of this discussion makes patently clear, "Congress has recognized and accepted that, in some circumstances, plaintiff can and will intentionally avoid federal jurisdiction." *Burns*, 31 F.3d at 1097 n.12 (emphasis supplied); *see also id.* (observing that "we are not convinced that congress would find the result Windsor fears (*that is, an amendment for greater damages after the one year deadline for removal*) to be bad") (emphasis supplied).

Moreover, "[i]f proceedings in state court have made significant progress toward trial or if substantial delay would result in removal of the action to federal court, removal should not be available to the defendant, *regardless of the plaintiff's actions*." *Barnett*, 973 F. Supp. at 1367 (emphasis supplied). Such is the case here.

Defendant removed this action on January 31, 2002, just twenty-five days before the case was scheduled to go to trial before a state court jury, thus resulting in "substantial delay and disruption" in the state court's proceedings. *See* H.R.Rep. No. 100-889 at 72, 1988 U.S.C.C.A.N. 5982, 6032-33.[21] Further, retention of the case here undoubtedly would result in far more delay in moving the

---

[19]For example, the oath required of attorneys who seek admission to the Bar of this court requires that each swear or affirm that he or she "will employ for the purpose of maintaining the causes confided to me such means only as are consistent with truth and honor, and will never seek to mislead the judge or jury by any artifice or false statement of fact or law...."

[20]*See, e.g.*, Alabama Rule of Professional Conduct 3.3(a)(1) ("A lawyer shall not knowingly ... make a false statement of material fact or law to a tribunal; ...").

[21]With further regard to the last precondition for equitable estoppel, see the Third Circuit's opinion in *Singh v. Daimler-Benz AG*, 9 F.3d 303 (3d Cir.1993), where the court observed that the 1988 Act amending 28 U.S.C. § 1446(b)

> *imposed an absolute one year time limit to remove a case from state to federal court on the basis of diversity of citizenship, see* § 1016(b)(2)(B), 102 Stat. at 4669 (codified at 28 U.S.C. § 1446(b)), thereby changing the prior procedure permitting a case to be removed after the claims against

action to a trial posture than would remand to the state court, which was on the threshold of trial when the action was removed. For those reasons, plaintiff's motion to remand is due to be granted. Upon remand, the state court judge will be free to reconsider, in the light of the limitations of Alabama Rule of Civil Procedure 15(a),[22] whether defendant's still pending motion for reconsideration of the order granting plaintiff's motion to amend her complaint should be rescinded.

A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 28th day of March, 2002.

_____
United States District Judge

---

defendants whose presence destroyed complete diversity were dismissed or dropped. While acknowledging that this provision would produce "a modest curtailment in access to diversity jurisdiction," *the House Report emphasized instead that the change would prevent "removal after substantial progress has been made in state court."* H.R.Rep. No. 889, supra at 72, reprinted in 1988 U.S.C.C.A.N. at 6032.

*Singh*, 9 F.3d at 309 (emphasis added).

[22]*See supra* note 7.

13